comes unnecessary to determine the above stated question raised by the appellee.

The assignments of error are overruled and the judgment is affirmed.

---

## Donner, Appellant, *v.* Wilson.

*Stockbrokers—Agency—Authority to sell—Price.*

In an action by stockbrokers against the owner of shares of stock, alleged to have been placed in their hands for sale, for damages resulting from the failure of the owner to deliver the shares to the purchaser, whereby the brokers were compelled to repurchase at an advanced price and deliver to their vendee, where it appeared that the stock had been sold by the plaintiffs at a lower price than defendant had authorized, a verdict and judgment for the defendant will be affirmed.

Argued October 18, 1916. Appeal, No. 153, Oct. T., 1916, by plaintiffs, from judgment of C. P. Allegheny Co., July T., 1914, No. 673, on verdict for defendant in case of P. E. Donner, C. L. Childs and C. W. Woods, Copartners under the firm name of Donner, Childs & Woods, v. Mary O. Wilson. Before Brown, C. J., Mestrezat, Moschzisker, Frazer and Walling, JJ. Affirmed.

Assumpsit to recover damages by reason of defendant's failure to deliver certain shares of stock.

From the record it appeared that in June, 1911, the defendant was the owner of seventy shares of the capital stock of the West End Savings & Trust Company. One Mackin, acting for the defendant, employed the plaintiffs to sell sixty shares of the stock. The plaintiffs sold fifteen shares at $155 per share and the sale was confirmed by the defendant. The defendant subsequently notified the plaintiffs not to sell stock at less than $160 per share. Subsequently Mackin gave the plaintiffs an order to sell

forty-five shares at $155 per share.   The plaintiffs did not communicate Mackin's instructions to defendant, but executed the order and requested the defendant to deliver the shares to the purchaser, which she refused to do and the plaintiffs were compelled to repurchase the stock for $205 a share.   Plaintiffs brought suit alleging their employment, the agency of Mackin, defendant's breach of contract and their loss.

Further facts appear in the following opinion of the court below, CARPENTER, J., refusing a new trial:

Plaintiffs are stock brokers and as such were authorized to sell stock owned by defendant in West End Savings Bank & Trust Company.

The authority to sell was given in June, 1911, and the first sale was made early in October, 1912, at which time 15 shares were disposed of at $155 per share.   Mrs. Wilson expressed some dissatisfaction with this sale, but ratified it.   Under date October 4, 1912, she wrote defendants as follows: "Please do not sell any more West End Savings Bank Stock for less than $160 per share." The postal card from which these words are quoted was introduced in evidence by plaintiff and is marked "Ex. 7."   Mr. Woods, when testifying in chief, was shown the postal card and in answer to the question as to whether he had received it from Mrs. Wilson said, "Yes, sir, it evidently was received right after the first fifteen shares was sold."   Defendant testified that at a later date she was called by 'phone by some person in plaintiff's place of business who asked her if she would sell ten shares additional to the party who had bought the 15 shares, and that she replied that she wouldn't sell any more at any price.   On cross-examination Mr. Woods stated in reference to changes in price (meaning asking price), that his recollection was that most of the changes were verbal, with the exception of one letter from Mr. Mackin and one from Mrs. Wilson.   The Mackin letter was written in June, 1913.   He was asked if he had any communication with Mrs. Wilson other than the matter con-

tained in the postal card, and replied "No, sir, I didn't think it was necessary." Complaint is made that the court did not lay down the correct rule as to the burden of proof. We are unable to discover the error of which complaint is made. Primarily the burden rested on plaintiff. Having shown general authority to sell and that one sale had been made and ratified by defendant, the burden of showing revocation of any limitation on the power to make an additional sale was on the defendant, and specific instructions to that effect were given. If the jury believed Mrs. Wilson's version of the transaction was correct then it was necessary for plaintiffs to show a renewal of authority to sell at $155 per share. Inasmuch as Mr. Woods produced the postal card written by Mrs. Wilson limiting the selling price to $160 per share, the burden of showing authority to sell for less rested upon plaintiffs, and so far as the evidence shows, Mrs. Wilson was not consulted by the brokers as to price. Had she authorized Mackin to fix the price at $160 it might be inferred that he had the right to reduce the price, but having received positive orders in writing, from the principal, not to sell below a price specified, the burden of showing a modification by the principal rested on plaintiffs. Even if it be conceded that there was no direct revocation of authority to sell, there is no escape from the conclusion that plaintiffs had written instructions direct from defendant not to sell for less than $160, and there is no evidence that they consulted her or received any instructions from her to sell for less. Although the postal card was offered in evidence it seems to have escaped the attention of the court during the charge. It was evidently not overlooked by the jury.

Verdict for defendant and judgment thereon. Plaintiffs appealed.

*Errors assigned* were certain rulings on testimony and charge of the court.

*James G. Marks,* for appellants.

*John D. Brown,* with him *John E. Winner,* for appellee.

PER CURIAM, January 8, 1917:

It clearly appears from the opinion of the court below, refusing plaintiffs' motion for a new trial, why the verdict of the jury should not be disturbed, and, on that opinion, the judgment is affirmed.

---

# Backer *v.* Borough of Aspinwall, Appellant.

*Negligence—Municipalities — Defective street — Depression in street—Conflict in testimony.*

1. In an action to recover damages for the death of plaintiff's husband, caused by his being jolted from a wagon upon which he was riding on a public street in defendant municipality, where it appeared that the accident resulted from the sliding or dropping of the wheel into a rut or depression in the brick pavement, and plaintiff's evidence tended to show that the hole was six or eight feet long, three or four feet wide and five to ten inches deep and had existed for about a year, the case was for the jury, and a verdict and judgment for plaintiff were sustained, although there was some evidence that the driver of the wagon was intoxicated; that his condition contributed to the accident, and that deceased participated in his carelessness.

*Damages—Death—Measure of damages—Earnings—Evidence.*

2. Where the evidence showed that deceased was fifty-two years of age, in good health, and by occupation a farmer and teamster; that in winter he assisted in preparing horse-radish for the market; that he had two teams, one of which he drove himself, and where the evidence further showed what the wages of a teamster were, the amount of deceased's personal expenses for clothing, etc., his habits, and what he did with his earnings, the proof was sufficient to enable a jury to form an intelligent estimate of the financial loss which his family sustained by his death.